IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**REAH A. CRISTADORO**                                                                                   **PLAINTIFF**

**v.**                                                **CAUSE NO.: 1:11cv55-SA-DAS**

**SALLY BEAUTY SUPPLY LLC**                                                  **DEFENDANT**

## MEMORANDUM OPINION

Before the Court is a Motion for Summary Judgment [35] filed by Defendant, Sally Beauty Supply LLC. After reviewing the motion, response, rules, and authorities, the Court finds as follows:

## BACKGROUND

In approximately 1997, Plaintiff Reah Christadoro ("Plaintiff") commenced her employment with Defendant Sally Beauty Supply LCC ("Defendant" or "Sally Beauty") as a cashier/customer service associate. After remaining employed for around six months, Plaintiff moved out of the state and no longer worked for Sally Beauty. However, in approximately 2000, Plaintiff returned to work at Sally Beauty as an associate and, in 2002 or 2003, Plaintiff was promoted to store manager.[1] At the times relevant to this litigation, Melba Breitigan was the district manager to whom Plaintiff reported, and Debra Mader was the territory manager.

According to Plaintiff, as the store manager, she possessed "authority to hire contract help such as the persons who cleaned the floors, plumbers and painters." For example, Plaintiff apparently hired two different companies to clean the floors in her store for several years after

---

[1] There appears to be some disparity as to the date in which Plaintiff began working at Sally Beauty for the second time. In Defendant's brief in support of its motion for summary judgment, it asserts, "Plaintiff was rehired at Sally Beauty as an associate in March 2002." Defendant further asserts that Plaintiff was promoted in June 2003. In Plaintiff's brief and deposition testimony, however, Plaintiff maintains that she was rehired in 2000, and promoted in 2002. For purposes of the Court's memorandum opinion only, the Court accepts the timeline as set forth by Plaintiff, yet also notes that the incongruence in dates is in no way material to the summary-judgment decision.

she became store manager. However, Plaintiff maintains that on one occasion when the floors needed to be cleaned, Melba Breitigan informed her that she was prohibited from hiring and paying someone to clean the floors. Due to this, Plaintiff asserts she notified Breitigan that her husband, Charlie Cristadoro, could do the job. Plaintiff declares that Breitigan stated, "Okay, but we can't pay him." According to Plaintiff, her husband continued to clean the floors at Sally Beauty on several occasions; he also allegedly continued to regularly help Plaintiff with other maintenance-related projects in the store. In her deposition testimony, Plaintiff states as follows:

> Q: Had Charlie worked in the store, again without being an employee, without being a contractor, and that's so I'm not saying when he was cleaning the floor and getting paid, but had Charlie worked in the store at any other time where he was working for free?
>
> A: He put up shelves in the back . . . hung peg board, did painting when they moved the shelves . . . He did plumbing. I had called Melba [Breitigan] and told her that the toilet was stopped up and she said, "Well, don't call that same plumber you called." She said, "Well, see if Charlie can unstop it."
>
> \*\*\*
>
> A: He also, I called [the] home office and told them we had some lights, a bunch of lights out in the store. And we normally had somebody come around and change lights from the company but he hadn't been around in a long time. So I called maintenance and they said, well, the guy wouldn't be around for a while. I said, well, my husband can do it, can change the light bulbs. And they said, okay, get him to do it. They didn't say anything about paying him, but I did reimburse him for the bulbs that he bought.
>
> Q: Do you remember when that happened?
>
> A: I don't know. There were several times that he helped me out that Melba knew about it and it was with her approval.
>
> \*\*\*
>
> Q: You said your husband also put up shelves in the back. When did that happen?

A:   Um-hum, that was when I first went up there and that was when Shelia [Blackwood][2] was my district manager and she knew he was putting up shelves and hanging peg board and all that.

\*\*\*

Q:   Other than that time, was - - did the management above you know that he was doing anything else related to the shelves after the first big job?

A:   Yeah, I mean, I wouldn't put up shelves without an authorization to do it.

Q:   Did they know Charlie was doing it?

A:   Yeah.

In January 2010,[3] every item in Plaintiff's store had to be repriced. According to Plaintiff, this was a "major undertaking" and, for this reason, Plaintiff had her husband assist her in changing the price stickers. Plaintiff apparently spoke with Breitigan prior to requesting her husband's assistance and, according to Plaintiff, Breitigan told her, "just be careful." The following day after Plaintiff's husband assisted in repricing the store's merchandise, Plaintiff informed Breitigan and Debra Mader that she received such help from her husband. Plaintiff was thereafter informed by Mader that she had violated company policy and she was asked to submit a statement. In her statement, Plaintiff admitted that both her husband and sister had helped her in the store. It appears that both Breitigan and Mader also authored statements regarding Plaintiff's actions. These statements suggest that Plaintiff was previously informed that it was against company policy to allow her family members to assist her with work in the store. Plaintiff disputes the contents of the statements.

---

[2] Shelia Blackwood was the district manager when Plaintiff was first promoted to store manager. Melba Breitigan replaced Shelia Blackwood.

[3] For purposes of completeness, the Court notes that, after working around five to six years as store manager, Plaintiff took leave under the Family Medical and Leave Act ("FMLA"). Plaintiff appears to have been on leave for a total of eighty-five days. While, as discussed *infra*, Plaintiff has withdrawn her FMLA claim, she maintains that, after she returned from FMLA leave in April 2009, Debra Mader began "harass[ing]" her. According to Plaintiff, in November 2009, despite achieving "almost all of her business performance goals," she received an evaluation that rated her performance as "marginal." Plaintiff alleges that this was an attempt "to create a paper trail in order to fire her."

According to Defendant, the statements gathered were submitted to Nancy Albright in Sally Beauty's Human Resources Department. Debra Mader informed the Human Resources Department that she did not see how Sally Beauty could not terminate Plaintiff. Defendant maintains that the Human Resources Department, in consultation with Vice President Rick Dobson, decided that Plaintiff's employment should be terminated. The discharge documentation was forwarded to Mader, and Plaintiff's employment was shortly thereafter terminated. After filing a charge with the EEOC, Plaintiff filed the instant action on February 24, 2011, alleging claims of age discrimination under the Age Discrimination in Employment Act ("ADEA") and for a violation of the FMLA. Defendant has filed a Motion for Summary Judgment [35], alleging it is entitled to judgment as a matter of law as to all of Plaintiff's claims.

## LEGAL STANDARD

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law.[4] The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323, 106 S. Ct. 2548.

---

[4] The Court feels compelled to point out to the parties that effective December 1, 2010, Rule 56 has been amended, and the summary judgment standard is now reflected in Rule 56(a), not 56(c). Rule 56(a) now states that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (emphasis added).

The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). However, conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002); SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1997); Little, 37 F.3d at 1075.

## ANALYSIS AND DISCUSSION

**A. ADEA**

It is unlawful under the ADEA "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To prove age discrimination, a plaintiff can rely on direct or circumstantial evidence. See, e.g., Machinchick v. PB Power, Inc., 398 F.3d 345, 350 (5th Cir. 2005) ("We have traditionally bifurcated ADEA cases into distinct groups: those in which the plaintiff relies upon direct evidence to establish his case of age discrimination, and those in which the plaintiff relies upon purely circumstantial evidence."). "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." West v. Nabors Drilling USA, Inc., 330 F.3d 379, 384 n.3 (5th Cir. 2003) (quoting Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 897 (5th Cir.

5

2002) (internal quotation marks omitted)). "In other words, to qualify as direct evidence of discrimination, an employer's comment 'must be direct and unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions that age was an impermissible factor in the decision to terminate the employee.'" Read v. BT Alex Brown Inc., 72 F. App'x 112, 119 (5th Cir. 2003) (quoting EEOC v. Tex. Instruments Inc., 100 F.3d 1173, 1181 (5th Cir. 1996)). Direct evidence of discrimination is rare, however. See, e.g., Rutherford v. Harris Cnty., Tex., 197 F.3d 173, 180 n.4 (5th Cir. 1999) (sex discrimination case) (stating that because direct evidence is rare in discrimination cases, plaintiff must ordinarily use circumstantial evidence to satisfy her burden of persuasion).

If a plaintiff lacks direct evidence of discrimination, he or she may prove discrimination using the burden shifting framework set forth in McDonnell Douglas Corporation v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).[5] "A plaintiff relying on circumstantial evidence must put forth a prima facie case, at which point the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for the employment decision." Berquist v. Wash. Mut. Bank, 500 F.3d 344, 349 (5th Cir. 2007). This burden on the employer is one only of production. See, e.g., West, 330 F.3d at 384–85. If the defendant articulates a legitimate, nondiscriminatory reason for the employment decision, the plaintiff must introduce evidence that would enable a reasonable trier of fact to find that the purported explanation is merely pretextual. See Gross, 557 U.S. 167, 129 S. Ct. at 2350; Jackson v. Cal–Western Packaging Corp., 602 F.3d 374, 378–79 (5th Cir.2010). In Gross, the Supreme Court analyzed the ADEA's use of the phrase

---

[5] In Gross v. FBL Financial Services, Inc., 557 U.S. 167, 129 S. Ct. 2343, 2349 n.2, 174 L. Ed. 2d 119 (2009), the Supreme Court noted that it "has not definitively decided whether the evidentiary framework of McDonnell Douglas . . . is appropriate in the ADEA context." Absent Supreme Court authority, this Court will follow the Fifth Circuit's post-Gross precedent and apply McDonnell Douglas to ADEA cases. See, e.g., Moss v. BMC Software, Inc., 610 F.3d 917, 922 (5th Cir. 2010) (applying McDonnell Douglas framework to ADEA claim).

"because of." In considering whether the burden of persuasion ever shifts to the defendant under the ADEA, the Court reasoned that "because of" means that "age was the 'reason' that the employer decided to act," and held that a plaintiff seeking to establish a discrimination claim under the ADEA must prove "that age was the 'but-for' cause of the employer's adverse decision."[6] Gross, 557 U.S. 167, 129 S. Ct. 2343.

> To establish a prima facie case of age discrimination, Plaintiff must show that
>
> (1) [s]he was discharged; (2) [s]he was qualified for the position; (3) [s]he was within the protected class at the time of discharge; and (4) [s]he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of h[er] age.

Jackson, 602 F.3d at 378. A prima facie case of discrimination is established with only a very minimal showing. Thornbrough v. Columbus & Greenville R.R. Co., 760 F.2d 633, 639 (5th Cir. 1985), *abrogated on other grounds by* St. Mary's Honor Center v. Hicks, 509 U.S. 502, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993). Plaintiff has carried her burden of proving a prima facie case under the ADEA. She was sixty-two at the time of her termination in January 2010, see 29 U.S.C. § 631(a) (protecting individuals "who are at least 40 years of age"), and she was minimally qualified for the position of store manager.[7] Plaintiff was also replaced by someone substantially

---

[6] The Court notes that there is some disagreement among lower courts as to how the "but-for" standard for discrimination under the ADEA applies when a plaintiff pleads and pursues alternative theories of liability. Compare Culver v. Birmingham Bd. of Educ., 646 F. Supp. 2d 1270, 1271 (N.D. Ala. 2009) (the "only logical inference to be drawn from Gross is that an employee cannot claim that age is a motive for the employer's adverse conduct and simultaneously claim that there was any other proscribed motive involved") with Belcher v. Serv. Corp. Int'l, No. 2:07-CV-285, 2009 U.S. Dist. LEXIS 102611, at *8 (E.D. Tenn. Nov. 4, 2009) ("While Gross arguably makes it impossible for a plaintiff to ultimately recover on an age and a gender discrimination claim in the same case, the undersigned does not read Gross as taking away a litigant's right to plead alternate theories under the Federal Rules."). Here, however, the Court need not address this issue. Defendant did not argue this point and, while Plaintiff plead alternative theories of liability in her complaint (*i.e.*, violations of the ADEA and the FMLA), Plaintiff has now conceded her FMLA claim.

[7] See Bienkowski v. American Airlines, Inc., 851 F.2d 1503, 1505-06 (5th Cir. 1988) ("A plaintiff challenging h[er] termination or demotion can ordinarily establish a prima facie case of . . . discrimination by showing that [she] continued to possess the necessary qualifications for [her] job at

younger. That is, Plaintiff was replaced by Linda "Cook" Holmes, who was 15 years younger than Plaintiff at the time of the termination. See O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 312-13, 116 S. Ct. 1307, 134 L. Ed. 2d 433 (1996) (explaining that replacement by someone substantially younger can be an indicator of age discrimination);[8] Jackson, 602 F.3d at 378. Accordingly, Plaintiff has demonstrated a prima facie case under the ADEA for purposes of summary judgment.

---

the time of the adverse action. The lines of battle may then be drawn over the employer's articulated reason for its action and whether that reason is pretext for discrimination."). In this case, Plaintiff was indeed minimally qualified for purposes of summary judgment. That is, Plaintiff was initially minimally "qualified" to be the store manager at Sally Beauty, and she adequately served as store manager for approximately eight years. During this time, Plaintiff appears to have regularly surpassed her business goals. Defendant's reasoning for terminating Plaintiff's employment does not necessarily strip away her underlying qualifications. In other words, there is a difference between "qualifications" and "performance" – a difference between possessing the minimal qualifications necessary for the job and utilizing those minimal qualifications to perform in manner that the employer deems satisfactory. As such, considering the "minimal" standard needed to establish a prima facie case and recognizing that Defendant's arguments can be properly evaluated in later steps of the analysis, the Court accepts that Plaintiff has met her initial burden of presenting a prima facie case of discrimination under the ADEA.

[8] In O'Connor, the petitioner, at age 56, was replaced by a 40-year-old worker. The lower courts had granted summary judgment, finding that the petitioner failed to make out a prima facie case of age discrimination because he had failed to show that he was replaced by someone outside the age group protected by the ADEA. The Supreme Court reversed and remanded, holding as follows:

> As the very name "prima facie case" suggests, there must be at least a logical connection between each element of the prima facie case and the illegal discrimination . . . The element of replacement by someone under 40 fails this requirement. The discrimination prohibited by the ADEA is discrimination "because of [an] individual's age," 29 U.S.C. § 623(a)(1), though the prohibition is "limited to individuals who are at least 40 years of age," § 631(a). This language does not ban discrimination against employees because they are aged 40 or older; it bans discrimination against employees because of their age, but limits the protected class to those who are 40 or older. The fact that one person in the protected class has lost out to another person in the protected class is thus irrelevant, so long as he has lost out because of his age. Or to put the point more concretely, there can be no greater inference of age discrimination (as opposed to "40 or over" discrimination) when a 40-year-old is replaced by a 39-year-old than when a 56-year-old is replaced by a 40-year-old. Because it lacks probative value, the fact that an ADEA plaintiff was replaced by someone outside the protected class is not a proper element of the McDonnell Douglas prima facie case.

Id. at 312-13, 116 S. Ct. 1307.

8

The burden thus shifts to the Defendant to articulate a legitimate, nondiscriminatory reason for the employment action. Here, Defendant maintains that it terminated Plaintiff because she allowed unauthorized individuals into "employee-only" areas and permitted non-employees to engage in employee work. This articulated reason satisfies Defendant's burden. Because Defendant has stated legitimate, nondiscriminatory reasons for terminating Plaintiff's employment, Plaintiff must present evidence from which a reasonable jury could conclude that Defendant's stated reasons for her termination are pretexts for age discrimination. Although a close call, the Court finds that Plaintiff has presented sufficient factual disputes to get past summary judgment. While Plaintiff concedes to allowing non-employee individuals (*i.e.*, her husband and sister) assist her at work, there are disputes as to whether this was actually approved of by Sally Beauty. Shelia Blackwood testified in her deposition that her husband, like Plaintiff's, also helped worked in the Sally Beauty store and did not get paid. Blackwood stated:

> Q: Had you ever had your husband working in the store and not paying him?
>
> A: Yes, but my supervisor knew that he was there.
>
> Q: Who was your supervisor?
>
> A: Debra Mader.
>
> Q: Did she have any problem with that?
>
> A: No.

Blackwood also testified concerning comments made by Debra Mader:

> A: Sometimes she makes little remarks.
>
> Q: Tell me the remarks you've heard her say.
>
> A: That we need new blood in the area.
>
> . . .

>     A:     That she didn't know why this manager didn't retire, she was old enough to.

Plaintiff also maintains that, as it related to Plaintiff's hearing loss, Mader also made remarks such as, "Yeah, that's what happens when you get old."[9] While none of these alleged comments constitute direct evidence indicating that Plaintiff was in fact terminated because of her age,[10] they do support Plaintiff's circumstantial case of age discrimination. Viewing the record as a whole and taking the facts in the light most favorable to the nonmovant Plaintiff, the Court concludes that material facts exist as to whether Defendant's reasons for Plaintiff's termination serve as pretext for proscribed discrimination under the ADEA.

---

[9] Defendant maintains that Mader was not one of the individuals who made the decision to terminate Plaintiff's employment. The Court notes that Plaintiff has presented enough factual disputes concerning this issue to preclude summary judgment.

[10] "'Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption.'" Rachid v. Jack In The Box, Inc., 376 F.3d 305, 309 n.6 (5th Cir. 2004) (quoting Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 897 (5th Cir. 2000)). If an inference is required for evidence to be probative as to a defendant's discriminatory animus in taking the challenged employment action, the evidence is circumstantial, not direct. Here, none of aforementioned statements unambiguously (*i.e.*, without any inference required) suggest that Plaintiff was terminated due to her age. See, e.g., Sandstad, 309 F.3d at 897–98 (company plan to "identify . . . younger managers . . . for promotion to senior management . . . ultimately replacing senior management" was not direct evidence of age discrimination because it required the inference that senior managers were to be fired to make room for younger trainees, rather than being replaced as they retire, change jobs, or are terminated for performance reasons); Morrison v. City of Bainbridge, Georgia, 432 F. App'x 877, 880-81 (11th Cir. 2011) (statements by direct supervisor that he was "going to get these old folks out of here and bring in some new blood" were circumstantial); Rowan v. Lockheed Martin Energy Sys., Inc., 360 F.3d 544, 548–49 (6th Cir. 2004) (holding that an employer's remarks about the general need to lower average age of workforce and stray comment that "the older people should go, bring in some new blood" made years before employees' terminations, were not direct evidence of unlawful age bias); Fortier v. Ameritech Mobile Communications, Inc., 161 F.3d 1106, 1113 (7th Cir. 1998) (the term "new blood" in the abstract simply means a change and is not direct evidence of age discrimination). In contrast, however, the court in Hawkins v. Frank Gillman Pontiac, 102 F. App'x 394 (5th Cir. 2004) found that the plaintiff presented direct evidence of discrimination when the *actual reasons given* by the direct supervisor for the plaintiff's mandatory transfer was that the employer wanted "new blood," "*you know, younger people*." The Court is not faced with such direct evidence in this case.

**B. FMLA**

In her response in opposition to summary judgment, Plaintiff notes that she "withdraws her FMLA retaliation claim at this time." As such, there is no need for the Court to address the merits of such an action, and Defendant is entitled to summary judgment on this claim.

**C. MITIGATION OF DAMAGES**

In a case such as this, the plaintiff is required to use "reasonable diligence to obtain substantially equivalent employment." West v. Nabors Drilling USA, Inc., 330 F.3d 379, 393 (5th Cir. 2003) (citing Migis v. Pearle Vision, Inc., 135 F.3d 1041, 1045 (5th Cir. 1998)). The employer has the burden of proving that a claimant has not exercised due diligence in seeking comparable employment after an unlawful discharge. Sellers v. Delgado Cmty. Coll., 839 F.2d 1132, 1139 (5th Cir. 1988) (citing Marks v. Prattco, Inc., 633 F.2d 1122, 1125 (5th Cir. 1980)). To meet this burden, an employer must demonstrate that comparable work was available and that the claimant did not seek it out. Id. In this case, the Court has reviewed the parties' respective arguments on Plaintiff's alleged failure to mitigate her damages and is of the opinion that summary judgment on this fact-intensive issue is inappropriate, and that presentation of proof at trial will allow for a more informed decision.

## CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment is granted in part and denied in part. Defendant's motion is granted as to Plaintiff's FMLA claim. Defendant's motion is denied as to Plaintiff's claim of age discrimination and as to the argument that Plaintiff failed, as a matter of law, to mitigate her damages.

<2000>Case: 1:11-cv-00055-SA-DAS Doc #: 46 Filed: 05/14/12 12 of 12 PageID #: 619

**So ORDERED on this, the   \_\_11th\_\_\_ day of \_\_May_____, 2012.**

              **/s/   Sharion Aycock_____**
              **UNITED STATES DISTRICT JUDGE**